16-3184-cr
United States v. Tukes

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13ᵗʰ day of November, two thousand seventeen.

PRESENT: GERARD E. LYNCH,
SUSAN L. CARNEY,
*Circuit Judges*,
ERIC N. VITALIANO,
*District Judge.**

------------------------------------------------------------------------

UNITED STATES OF AMERICA,

*Appellee*,

v.                                                                No. 16-3184-cr

ROMELL TUKES,

*Defendant-Appellant*.

------------------------------------------------------------------------

FOR APPELLANT:               Bruce R. Bryan, Bryan Law Firm, Syracuse, NY.

FOR APPELLEE:                Anden Chow, Michael Ferrara, Assistant United States Attorneys, *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY.

---

\* Judge Eric N. Vitaliano, of the United States District Court for the Eastern District of New York, sitting by designation.

Appeal from a judgment of the United States District Court for the Southern District of New York (P. Kevin Castel, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on March 31, 2016, is AFFIRMED.

On November 9, 2015, in the United States District Court for the Southern District of New York, defendant-appellant Romell Tukes pleaded guilty to one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). Early in the morning of January 29, 2015, Tukes shot two individuals (one in the shoulder, one in the hand) during an attempted drug purchase in Peekskill, New York. Following his guilty plea to the firearm possession charge, he was sentenced to 96 months in prison, below the applicable U.S. Sentencing Guidelines range of 110-120 months. On appeal, Tukes argues that this sentence is substantively unreasonable. He urges that the District Court failed to adequately consider his personal history, mental capacity, and acceptance of responsibility. Tukes further argues that his criminal history category of VI, although correctly calculated, "overstates the seriousness of his past criminal record." Appellant's Br. 16. We assume the parties' familiarity with the facts and the record of the prior proceedings, to which we refer here only as necessary to explain our decision to affirm.

We review sentencing decisions for abuse of discretion. *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008) (en banc). We have previously commented that substantive unreasonableness challenges face "a particularly deferential form of abuse-of-discretion review." *Id*. at 188 n.5. Because sentences imposed within the Guidelines range are typically reasonable, it is "difficult to find that a below-Guidelines sentence is

2

unreasonable." *United States v. Perez-Frias*, 636 F.3d 39, 43 (2d Cir. 2011). This Court will set aside the sentence imposed by a district court on substantive unreasonableness grounds only "in exceptional cases where the trial court's decision 'cannot be located within the range of permissible decisions.'" *Cavera*, 550 F.3d at 189 (quoting *United States v. Rigas*, 490 F.3d 208, 238 (2d Cir. 2007)). "The particular weight to be afforded aggravating and mitigating factors is a matter firmly committed to the discretion of the sentencing judge with appellate courts seeking to ensure only that a factor can bear the weight assigned it under the totality of circumstances in the case." *United States v. Broxmeyer*, 699 F.3d 265, 289 (2d Cir. 2012) (internal quotation marks and citations omitted).

Tukes does not argue that the District Court failed to consider his arguments regarding his personal history or any other factor. Rather, he contends the District Court afforded them insufficient weight. Thus, in seeking to persuade us that the sentence is substantively unreasonable, Tukes faces a particularly heavy burden. *See Broxmeyer*, 699 F.3d at 289. He fails to carry it here.

First, Tukes claims that the District Court "did not adequately consider his tragic personal history," including his "diminished mental capacity." Appellant's Br. 16. Nowhere does the record (or Tukes's counsel) suggest that Tukes is intellectually disabled, although the cases Tukes cites in support of his argument regarding "diminished mental capacity" largely have to do with intellectual disability or other inability to understand wrongfulness. *See, e.g.*, *Tennard v. Dretke*, 542 U.S. 274, 287 (2004) (discussing mitigation for "mentally retarded offenders" with low IQ); *United States v.*

*Silleg*, 311 F.3d 557, 562 n.4 (2d Cir. 2002) (noting diminished capacity adjustment appropriate when defendant cannot "(A) understand the wrongfulness of the behavior comprising the offense or [] exercise the power of reason; or (B) control behavior that the defendant knows is wrongful"). Tukes appears to argue primarily that his capacity was meaningfully diminished because he was "under the influence of alcohol and/or drugs" when he shot the two individuals during the attempted drug transaction. Appellant's Br. 24. The Guidelines provision allowing departures for diminished mental capacity, however, states that a reduction is inappropriate if "the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants." U.S.S.G. § 5K2.13. Thus, the District Court was correct to not reduce Tukes's sentence on the ground that he was intoxicated during the offense.

Tukes next argues that the poor quality of his childhood, in which he suffered abuse, together with his mental health issues justify a downward deviation from the Guidelines beyond the already below-Guidelines sentence. We conclude that the District Court considered and reasonably weighed the factors that Tukes cites. The District Court observed at sentencing that Tukes "had a horrible upbringing, lived in a household characterized by neglect initially and also, at a later point in time, his mother's partner abused drugs and alcohol, was physically and verbally abusive and sexually molested the defendant's sisters." App'x 58. The District Court also discussed Tukes's history of drug abuse, his suicide attempt, and his mental illnesses. We may not substitute our judgment for that of the District Court as to the weight to afford these factors. *See Broxmeyer, 699*

4

F.3d at 289 (holding weight afforded to aggravating and mitigating factors "firmly committed" to discretion of the sentencing judge). We will not do so here.

Tukes next contends that his criminal history category of VI, although accurately calculated, overstates the seriousness of his actual criminal history. Whether to grant a departure based on an overly high criminal history category or otherwise impose a below-Guidelines sentence is a matter, like the assessment of the factors just considered, that ordinarily "lies within the discretion of the sentencing judge." *United States v. Sanchez*, 517 F.3d 651, 661 (2d Cir. 2008). Tukes does not claim that the District Court misunderstood its authority to depart from the Guidelines; he argues simply that it failed adequately to depart from the correctly calculated criminal history category and Guidelines range. Upon review of the record, we conclude that the District Court adequately considered Tukes's criminal history and did not exceed the permissible scope of its discretion in its assessment of that history.

The root of Tukes's appellate challenges lies, we think, in the fact that when he conducted his plea negotiation with the government, both defense counsel and the prosecution were unaware of Tukes's conviction as a youthful offender for selling drugs when he was 18 years old. Thus, the stipulated Guidelines range of 70-87 months erroneously rested on a criminal history category of V and was lower than the correct Guidelines range, as later calculated by the District Court. The District Court properly informed Tukes during his plea hearing, however, that the stipulated Guidelines range was not binding on the court; that it might turn out to be wrongly calculated; and that the government could not guarantee the court would impose a sentence within that range.

App'x 26-27. The written plea agreement, which Tukes signed, also acknowledged that the stipulated range was not binding on the Probation Office or the District Court and that the Guidelines did not definitively determine Tukes's sentence.

This Court has previously affirmed the use of youthful offender adjudications in calculating criminal history scores. *See United States v. Matthews*, 205 F.3d 544, 548-49 (2d Cir. 2000). Furthermore, during the sentencing hearing the District Court thoughtfully considered Tukes's criminal history, offense by offense (including his youthful offender adjudication). App'x 59-60. It then repeatedly stressed the extensive nature of Tukes's criminal history (this included seven separate convictions incurred between the ages of 17 and 22), implicitly rejecting the argument made by Tukes's counsel at sentencing that the assigned criminal history category of VI overstated the seriousness of Tukes's record. *See United States v. Hilts*, 696 F. App'x 1, 3 (2d Cir. 2017) (summary order) (holding that extensive consideration of criminal history at sentencing implicitly rejects argument that criminal history score overstated severity of that history). In fact, the District Court suggested that prior sentencing courts had treated Tukes's early criminal history too lightly, commenting, "[M]aybe we wouldn't be here today if [Tukes] had spent more time on prior offenses." App'x 59. Thus, the District Court considered whether Tukes's criminal history was overstated and determined that it was not. This determination lay within the range of the District Court's permissible discretion.

Finally, Tukes urges us to conclude that the District Court failed adequately to consider his expressions of remorse and attempts to rehabilitate himself when the court applied only a three-level reduction to Tukes's offense level for acceptance of

6

responsibility. Tukes argues that, in addition to the three-level reduction, the District Court should have further departed because (Tukes asserts) he had a viable defense at trial but chose to plead guilty. The record reflects, however, that the District Court considered Tukes's expressions of remorse and acceptance of responsibility and reasonably decided on that basis to make a three-level reduction. As to Tukes's attempts at rehabilitation, Tukes points only to a brief period of rehabilitation in 2014 *before* he engaged in the conduct leading to this conviction. By the time of the shooting at issue in this case, Tukes had quit college, begun abusing drugs heavily again, and stopped working—apparently abandoning his efforts at rehabilitation. *Cf. United States v. Carpenter*, 320 F.3d 334, 343 (2d Cir. 2003) (suggesting extraordinary rehabilitation after conduct at issue and before arrest can justify sentencing reduction). We perceive no error in the District Court's treatment of Tukes's expressions of remorse and attempted rehabilitation in fashioning the sentence imposed.

We have considered all of Tukes's remaining arguments and conclude that they are without merit. Accordingly, the judgment of the district court is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court

7